Henry Miranda v. Jefferson Sessions, III. Ms. Hewitt? Yes, Your Honor. Good morning. You may proceed. Good morning. Kelly Hewitt on behalf of Henry Miranda. May it please the Court. This Court should reverse the Board of Immigration Appeals' decision for three reasons. First, the Board erroneously used a de novo standard to reverse the IJ's fact findings and supplanted those fact findings with their own. Second, the Board misstated the law regarding past persecution. And third, the Board erred by not addressing Mr. Miranda's other proffered particular social groups. Turning to the first point, when the Board disregarded the immigration judge's findings of fact and supplanted those facts with their own, this was engaging in erroneous de novo standard of review. Now, you're the same counsel, so this is a legitimate question. This is not like the earlier case, though, because the Board opens by very clearly saying what the standard review is and very clearly doing a traditional BIA review, right? In part, yes, right. Well, no, they say so, right? The Board does very clearly and directly say what standard they believe they should be doing.  And they disregard the immigration judge's facts repeatedly. They list them, counsel, for two pages. Tell me what they disregard. They say there's no clear error in them. They do say there's no clear error. Then in two different portions, the Board disregards those facts and supplants their own. First, when the immigration judge found that the threats that Mr. Miranda received were credible, specific, and not exaggerated. Later, the Board then says that they were not immediate or severe and these threats were vague. These are findings of fact that the Board engaged in. That sounds like conclusions. I disagree. How can you tell? Because those are issues of fact. They are not legal conclusions. The legal conclusion is when they said these threats do not rise to the level of past persecution. That is a legal conclusion that may be reviewed de novo. When we are looking at the character of the threats, we are looking at the evidence presented to the immigration judge. The I.J. stated, in complete opposition to what the Board later found, the I.J. stated that they were credible, they were specific, they were not exaggerated, and this is the requirement under the law. So then the I.J. also moved on to find the correct legal conclusion. There's a second place where the Board also supplants the immigration judge's findings of fact. The immigration judge's findings of fact supported his decision that the particular social group proffered by Mr. Miranda and the I.J. was a cognizable particular social group. In matter of LEA, the Board has found that when looking at the cognizability of a particular social group, this is a fact-based inquiry made on a case-by-case basis. So while the cognizability is a question of law, it is undergirded by findings of fact that the I.J. is in the correct role to make. The I.J. stated that this was a particular social group because it was, in fact, particular, it was distinct, it was immutable. These issues that undergird the concept of cognizability are issues of fact that can be found by the immigration judge. The Board then, for its part, stated that these were not particular, distinct, particular social group. This is, again, using that de novo standard of review after clearly stating that they found no clear error in the immigration judge's factual findings. This court in Ramirez-Pero v. Gonzalez laid out a two-step process for dealing with clear error and whether that is being applied or not. So Ramirez-Pero says that the Board must state that there was clear error and then address the facts, the evidence, and testimony that the immigration judge used to reach their conclusion. Here, the Board did not say it was engaging in clearly erroneous analysis. And while it did skirt the issues of some of the evidence and testimony, it also didn't directly say this is where the immigration judge was wrong and we are now taking our own fact finding into analysis. This court in Waldron v. Holder, I think, threaded the needle of this nuanced situation, the nuanced relationship between the immigration judge and the Board. In Waldron v. Holder, this court said that there is a difference between weighing the factual findings as the I.J. found them and re-weighing the underlying evidence and testimony that the immigration judge relied on. Here, we're looking at a situation where the department in its brief says, you know, the Board is only re-weighing evidence. You can only re-weigh an immigration judge's evidence when you accept those facts as the, excuse me, re-weigh the immigration judge's facts when you accept those facts as they're stated. Yes, the Board does say we accept these facts, but then it goes on to contradict those facts, and this is the re-weighing of the underlying evidence. For these reasons, this court should reverse the Board's decision. Even if the Board did not engage in this de novo review of the facts, which it did, but even if it didn't, Mr. Miranda still showed that he suffered past persecution. The Board misstated the law on past persecution when it said that Mr. Miranda did not suffer past persecution because he was not physically harmed and had no physical confrontations. This is a misstatement of the law and also a mischaracterization of the facts in this case. This court has repeatedly found that there is no requirement for physical harm in order to have suffered past persecution. Malanga v. Holder, Law v. Holder, Shola v. Gonzalez, Corrado v. Ashcroft specifically says that a single death threat can constitute persecution if it is not exaggerated, nonspecific, or lacking in immediacy. Again, these are those same findings of fact that the immigration judge already found. But more importantly, this is showing that there are instances when threats of death are enough to constitute past persecution. When the Board of Immigration Appeals stated that because he did not suffer physical harm, he did not suffer past persecution, this is a misstatement of the law. It is also a mischaracterization of the facts in this case to say that he did not suffer a physical confrontation. Mr. Miranda was seated next to a boy in his taxi. This boy was shot from the back seat directly next to him. That shooter then turned the gun to Mr. Miranda and threatened him. They then shot the boy more, threatened Mr. Miranda again. This single incident of a death threat fits the characterizations of a threat that rises to persecution as explained in Corrado v. Ashcroft. Okay, was it momentarily? You know, that's what the Board says. The Board adds momentarily. The gang members momentarily pointed the gun at the respondent. I don't know what the definition the Board is finding with momentarily. Well, what did the I.J. say? Did the I.J. find momentarily the same way the Board does? No, Your Honor. Did it act like it was longitarily or whatever the other word is? Yeah, I'm pretty sure that's what he found. What the I.J. found was that this was an immediate threat, that it was credible, and it was severe. I don't know what the I.J. finds, credible, severe, and immediate, but whether that gun is held to you for seconds, whether it is held to you for hours, it is a serious threat. Mr. Miranda does not need to be shot or held hostage for three hours in this situation to meet the rising level of past persecution. Further, while this incident alone rises to past persecution. I think the words, I found it now, of the hearing officer are pointed, right? The gunman then pointed the gun at the respondent and threatened him. Yes, Your Honor. I don't think momentarily is out of the question, right? I also don't think that momentarily is a finding of fact made by the I.J. there. If there were questions about the length of time and if that were a material, then they should have remanded to the I.J. The other thing is that we look at past persecution in accumulation. After this point in time, in this taxi, we have Mr. Miranda, we have the boy who was murdered, we have the shooter, and we have another man. This other man then seeks out Mr. Miranda in a local market and says, they're looking for you. This is from a gang member, a known, you know, associate of murderers saying that they are looking for Mr. Miranda. This is another threat. And then finally we have a third. And the board recognizes that sentence just as you stated it, correct? Yes, Your Honor. Okay, go ahead. However, the board then supplants the I.J.'s fact finding in calling these threats not immediate and calling them vague. They're trying to apply our law, I think, right, in that paragraph? I disagree. I think your law is that the immigration judge's facts, when they are not clearly erroneous, must be accepted. And the facts are that this threat was not exaggerated. It was severe. It was immediate. And then the conclusion, the legal question, is did it rise to past persecution? Then finally, the board did not address a third threat that should also have been taken into account. The boy that was shot's family later murdered the shooter of the boy. They then began threatening Mr. Miranda through his family and stated, you will be the next victim. This is a very clear, credible threat. Now we're looking at three different instances, and then in the third instance multiple threats, against Mr. Miranda's life by people who are capable of killing, willing to kill, and shown murderers. That was said to his sister, though, correct? Yes, Your Honor. I believe there were also phone calls to his mother that are referenced in the IJs. Right, correct. But they weren't said to him. Not directly to him. He was in hiding already at this point, which is. So when, and these threats were called vague. This is a mischaracterization of these facts. Further, it's supplanting the immigration judge's fact finding. Looking at this, we see that Mr. Miranda did rise to the, what he suffered rose to the level of past persecution. But importantly, the Board of Immigration Appeals did not address future persecution. And the immigration judge found that more likely than not, Mr. Miranda will suffer future persecution upon return to El Salvador. Well, now wait, they did. They do talk about future persecution. I know they say on account of a social group, but they're addressing it in that paragraph, aren't they? They are not. There can't be future persecution unless it's on account of membership in a group, right? They go together. But they are two different legal conclusions. So if he does not have a particular social group, it is correct. We don't need to address future persecution. However, when we're looking at particular social group, we've already established that the board incorrectly engaged in a de novo review of those facts. Counsel, at this time, don't we have to defer under Chevron analysis to the board's analysis of a particular social group? Under Chevron, we have to, no. If the facts rise to the level of a particular social group, we do not have to defer to the board in their fact-finding because they do not have a fact-finding role here. So because they have improperly engaged in a de novo review of the facts, their legal conclusion is false. It's not based on a legally valid premise. So if this board is going to rely, or excuse me, if this court is going to rely on the board's decision in a particular social group, as it should under Chevron, that can only be when that conclusion is legally valid. Here, that is not the case. Finally, if the court did not like the particular social group proffered by the immigration judge that the immigration judge analyzed, then the board should have remanded to the immigration judge to address the other proffered particular social groups. The department argues that this issue has not been exhausted. That's incorrect. It was the particular social groups were stated in pre-hearing briefs, stated at trial, and also listed in the Board of Immigration Appeals brief. The BIA brief did focus on the analysis of the particular social group that the IJ found and that the department- I know your time is short, so does the Njugi case, or Ngugi, the way you say it, is that so close that they didn't need to do further inquiry on a social group? In that case, it was. That's a distinct from our case. Here, we have some very marked differentiation between these four groups. The board is not the correct body to engage in this fact-finding, parsing of facts between these particular social groups, because as the board has stated in matter of LEA, it is a fact-finding inquiry on a case-by-case basis. That is not the board's role. That is the immigration judge's role. And again, the specific social group as you define it is what? Well, the particular social group that the immigration judge found he belonged to is taxi drivers in Quetzaltepeque who have witnessed a gang murder. We also proffer that the other three groups are valid social groups. I noticed the immigration judge referred a couple of times to the MS-13 gang. The board never referred to it. Is the identity of the gang that made these threats of any particular significance? Yes, Your Honor. In light of the fact that we've all read the articles like in the Washington Post about if the MS people in wherever they are, what's this? El Salvador. Once some kid in Washington, D.C. killed, the kid will be killed. Yes, and this is important evidence that the board did not address in its past persecution analysis. Do you think the board studiously avoided getting into this identity of this gang? You know, I could spend all day trying to wrap my head around what they try to do. I'm sorry. It's okay. But, yes, it does matter. The characteristics of MS-13 are findings of fact that the IJ is most appropriate to address. Thank you. We'll give you a minute on rebuttal. Thank you, Your Honor. We'll hear from the government. Good morning, and may it please the Court. Greg Mack, counsel for the respondent. Good morning, Mr. Mack. Good morning, Your Honor. Counsel for the respondent, the Attorney General of the United States. Judge Woolman, I'll try to take the tact and maybe go out on a limb and speak to you in terms of your impressionistic approach. These are tough, sad cases. Tough, sad cases that noncitizens present to immigration judges in the first instance where they say life or death consequences are on the line. And somebody in the first instance has to make sense of what those cases, what those facts mean in terms of the Immigration and Nationality Act. The immigration judge here said this was past persecution and that this was a cognizable particular social group. The Board of Immigration Appeals as charged by the Attorney General has a supervisory role in that regard. It says the Attorney General's regulations say questions of fact are the domain of the immigration judges. Questions of law, judgment, and discretion are the domain of the Board of Immigration Appeals. There has to be some degree of uniformity and consistency with respect to immigration nationality law, and that's the Board's role, and that's what the Board did in this particular case. It looked at the set of facts that the immigration judge found with respect to past persecution and cognizable social group. The Board appropriately says there's no clear error in those facts. The Board specifically says there's no erroneous findings of fact in this case. But what the Board did was say look at these facts and say these facts do not add up to past persecution or cognizable social group. Those were appropriate decisions by the Board of Immigration Appeals as they went to it. Well, my trouble with that is doesn't that reflect a refined estrangement from reality? I'm sorry, Your Honor. I forget my allergies. Are they blinking at reality when they're saying that these groups don't pose a significant threat to those whom they encounter? Well, I don't think they're saying that. And as to the question with respect to whether MS-13 grain was mentioned by the Board and what the threat that that gains provide, I believe the social groups that were provided to the immigration judge and the Board didn't specifically refer to the MS-13 grains. There certainly was testimony and facts about MS-13 grain. But the social groups that were provided and the social group that was asked to be addressed by the Board was witnesses from this person's hometown who witnessed a murder. This has a gang murder, counsel. Well, gang murder in their taxi cab, but not MS-13. Those former taxi drivers. Former taxi drivers who were witnesses to a gang murder. From that very place. From that very place. That was the only one that was presented to the Board of Immigration Appeals. There was no cross appeal from petitioners to the Board of Immigration Appeals raising the other social groups. But taxi cab drivers is really incidental here. What really the focus is is witnesses. And I think that's key from the Board's citation to the Nguji case, talking about how witnesses may become a cognizable social group in the context of did they testify in open court? Or is there some indication in the society, in the particular society in question, that witnesses as a whole are vulnerable? But the main point is, is in their supervisory role, the Board said these facts do not rise to the level of persecution. This particular set of facts don't add up to passive persecution. Well, it's a value judgment. Call it what you will. And I guess your response is that's not our or the court's business to question the value judgment that the Board makes. Correct. And somehow they're encompassed with this great authority and vision that might disregard reality, but that's tough. Well, that's the reality the Board operates in, and that's where I started with these are tough, sad cases where the immigration judges start in the first instance hearing these cases. The Board has a supervisory role in that regard to look at that particular set of facts and say, what is persecution? Because it's not defined in the INA. Neither is a particular social group. It's a term of art, if you will. But the Board has a supervisory role. To what extent is the concept of persecution subject to judicial interpretation? It's subject to judicial interpretation every day because the Board. And in this case also. In this case also. And the courts do that every day in looking at a particular set of facts and asking whether the record compels a conclusion. Well, which one of our cases do you think is the closest? The Board lists several. Well, I think the Waldron case and Ramirez-Pirro set forth how this court looks at these particular questions in terms of questions of fact and question of law. But I think also Malanga. I was asking a plainer question, I guess a simpler question. Which case do you think is closest? Let's do past persecution. The Board lists several. Which of our cases do you think is closest? I think the Board cited, and I think we cited in our brief, the Shigiel case. And with respect to a particular social group, the Board cited, and I think we cited in our brief, the Malanga case. So Shigiel Malanga from this own court said those are terms of art, those are questions of law. And again, the Board's supervisory role here said this particular set of facts did not add up to past persecution, and this particular set of facts did not establish a legally valid cognizable particular social group. That's perfectly within the Board's supervisory role with respect to questions of law. Now, turning to the merits with respect to the substantial evidence question on whether these facts do in fact rise to the level of persecution. They weren't sufficiently menacing to rise to the level of persecution, and the Board has appropriately decided on that ground. And also with respect to a particular social group, the Board cited the Nguji case, which is also another witness case. This petitioner here did not testify in open court, and the Board, in citing the Nguji case, indicates that witnesses in El Salvador aren't particularly vulnerable. They're certainly referring to another country there, but I think in citing Nguji, that should withstand review by this court. Now, petitioner cites also to, back to the question of law question, it's a matter of LEA. And we responded to the matter of LEA in our brief in footnote 2 at page 33. Merit of LEA says at page 42, whether a group is cognizable as a fact-based inquiry made on a case-by-case basis, but the Board also says this language does not mean that this implicates a question of fact, but rather indicates that the evidence is available in any case will certainly vary, and the import to be drawn from the evidence, whether a group is socially distinct, remains a question of law. So that's the Board's answer to the matter of LEA and whether it's a question of fact or a question of law. And we would ask the court to deny the petitioner. Well, it's an answer. How plausible it is is another matter. The Board's role in looking at that is to, again, answer whether a particular set of facts adds up to pass persecution or whether the group is legally cognizable, a particular social group, and as a matter of a question of law. And maybe it's – I'll say this. Whether it's a question of law or a question of judgment or a question of discretion are fungible statements. I think in my interpretation, it's a question of judgment. And that's – I think that's a better way of understanding whether something adds up to pass persecution or a cognizable social group. The Board certainly uses the term question of law, but it's really a question of judgment because, again, these terms are not – Does it come down to a matter of value judgment? Correct. And whether that's a question of law or value judgment, it's a matter of discretion overall for the Board to say what the law is in terms of its supervisory role here. And so we would ask the court to deny the petition for review, Your Honors, if there's no further questions. Is there any – I assume the answer to this will be no, but is there any empirical database that has ever traced any of these cases to see what actually happens in the real world? I suppose not. No. Who follows the victims, as it were? No. And, again, that's where I started with in the beginning, that these are tough, sad cases that the immigration judges and the Board are charged in the first instance of figuring out what the law and what the facts are. The IJ figured out what the facts were. The Board said it didn't disagree with any of the facts here. And it made a value judgment as to whether it was pass persecution or not. And also, these are hundreds of thousands of cases that these immigration judges hear. To track hundreds of thousands of cases is entirely a daunting matter. But aliens or, excuse me, non-citizens have a way of bringing that information to the Board through a motion to reopen. Say, hey, I went back after I was removed. I encountered further difficulties. Here's my motion to reopen saying there's changed country circumstances. Please hear my case again. So there is an avenue in that respect. And are those cases frequently brought? I'm sorry? Do you get many of those? Oh, yes. And this court sees motions to reopen all the time. I mean, after they've gone back. Yes. You don't ever get any motions from those who went back and got killed, of course. Well, that answers itself, of course. But certainly aliens or, excuse me, non-citizens who have left and returned to their country or who have failed to depart and remain in this country have an avenue through a motion to reopen to say, look, the facts on the ground have changed. I want to pursue my case again before the Board of Immigration Appeals. And then finally, how do you respond to my gratuitous comment about the MS-13 gang? Is that an irrelevant consideration we should put out of our minds? That which we as judges are led to believe exists? Well, certainly gangs are a scourge in these countries in Central America. They're within blocks of the White House, I understand. Well, they're a scourge. And I live in the Washington, D.C. area. They're a scourge in this country and in Central America. But just because they're a scourge overall to a society overall, this court – We can't solve all the problems of the world. I guess your answer is – I go back to these are tough, sad cases. You can't grant withholding of removal and asylum in tough and sad cases. The board and the INA say what past persecution is. Well, that has a certain sterile logic to it, but it doesn't really appeal to our better instincts, if you can call it that. Well, again, Congress has – There are no better instincts in these cases. Well, Congress has said what the terms are, and the board has supplied the law in terms of what the law means. And we apply that law, and this court applies the law in terms of what these terms mean. You can't grant withholding asylum in sad and tough cases in the first instance that the immigration judge and the board say they aren't sad and tough enough. I guess that's what the Supreme Court has said, but they – Well, enough about that. Thank you for your argument. Thank you, Your Honors. Your Honors, counsel for the department has made a very eloquent argument about that past persecution or particular social groups are questions of law. What counsel has not done, either here in oral argument or in briefs, is address the fact that the board supplanted the immigration judge's fact-finding with their own. They're not allowed to do this. In this case, as he said, a very sad, tough case, an immigration judge decided that more likely than not, he will be persecuted, and specifically said death, upon removal to El Salvador. The board is not in the role to see this evidence. The immigration judge refers to testimonial evidence, documentary evidence, affidavits, country condition reports, and specifically addresses why taxi drivers as a group in El Salvador are treated differently. The immigration judge is the fact-finder. The immigration judge found that more likely than not, he will be persecuted upon return to El Salvador. But it does seem like a highly specialized or distinct social group. Which is exactly what the law requires. The law requires that a particular social group is distinct, that it is in some way set apart from society. And again, your closest case from our court or any court that would so narrowly define a social group would be what? Your Honor, I guess I would refer to a matter of LEA, where they find that even a nuclear family group that is so specialized, just family members of Kelly Hewitt are a particular social group, is the closest here in our case. Most importantly, the board supplanted the immigration judge's fact-finding, and counsel has not rebutted that fact here or in their briefing. Thank you, Your Honors. All the cases submitted, we will take it under consideration.